(109 App. Div. 729)

HUNT et al. v. SMITH et al.

(Supreme Court, Appellate Division, First Department. December 15, 1905.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—RIGHT TO PROPERTY—FINDINGS.

In an action against an assignee for the benefit of creditors of brokers to recover a surplus of certain bonds which had been purchased by the brokers for plaintiffs and another customer, remaining after the satisfaction of loans which they were pledged to secure, the findings considered, and *held* to sustain the referee's conclusion that plaintiffs and such other customer were entitled to the surplus as against the general creditors.

2. BROKERS—PURCHASE OF BONDS—TRANSFER TO CUSTOMERS.

Brokers, purchasing bonds for customers, may transfer a common ownership in the mass of bonds purchased by them to their several customers, and treat them as owners, and are bound by such transfer.

3. SAME—RIGHT OF GENERAL CREDITORS.

Assignees for benefit of creditors or general creditors of brokers have no claim on any bonds actually belonging to customers or in any proceeds arising from their sale.

Appeal from Judgment on Report of Referee.

Action by Catherine C. Hunt and another, executors of the will of Richard M. Hunt, deceased, against Frank Sullivan Smith, as assignee for the benefit of creditors of Henry Marquand & Co., and others. From a judgment for plaintiffs, defendant Smith, as assignee, appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, CLARKE, INGRAHAM, and HOUGHTON, JJ.

Henry W. Taft, for appellant.
Charles P. Howland, for respondent Hunt.
Thomas Allen, 3d, for respondent Allen.

HOUGHTON, J. On the 28th of June, 1901, the firm of Henry Marquand & Co., doing business as brokers and bankers, made a general assignment for the benefit of their creditors to the appellant Smith, who qualified as such assignee. The plaintiff and defendant Allen were for some time prior to the failure customers of the firm, and the plaintiffs had purchased through it and fully paid for 16 4 per cent. bonds of the St. Louis, Iron Mountain & Southern Railway, of the denomination of $1,000 each, and the defendant Allen had purchased and fully paid for 20 similar bonds. On the day of the failure the firm had on hand and in its constructive possession, but pledged, however, to various banks and trust companies as security for loans, exactly 36 of these bonds. Upon their sale the loans were satisfied, and a surplus remained which was paid to the assignee. It is to reach this surplus that this action is brought. The position of the assignee is that it belongs to the general creditors of the firm. The position of the plaintiffs and the defendant Allen is that it belongs to them in the proportion in which they had purchased and paid for the bonds. Their contention was upheld by the referee, and the plaintiff was awarded 16-36ths of such surplus, and the defendant Allen 20-36ths, and from such disposition the assignee appeals to this court. The judgment roll only is before us; the appellant insisting that the facts found by the referee do not sustain his conclusions of law.

In substance the findings of fact are: That Marquand & Co., during the two years or more preceding its failure, purchased for various customers a large number of St. Louis, Iron Mountain & Southern Railway 4 per cent. bonds, some of them being purchased prior to their actual issue, delivery to the firm being made at a later time. That all the bonds were kept in a general mass or lot, none being earmarked or set apart by the firm by numbers, in individual accounts or otherwise, as belonging to or having been purchased for any particular customer. That when any customer required delivery of the bonds purchased for him, the number of bonds paid for was taken from the general lot. That in no case, where any customer directed a sale or demanded delivery of these bonds, were the identical bonds purchased for or sold for him delivered, but his direction was complied with out of any bonds of the same issue which were accessible, without regard to their serial numbers or past history. That at all times the firm had in its actual possession, or pledged for loans, the exact number of bonds to which their several customers were at any time entitled. That all the bonds which they so had were bonds of customers, and were not owned by the firm itself. That on January 1, 1901, the only customers who had purchased and paid for bonds and were entitled to delivery thereof from the firm were these plaintiffs, defendant Allen, the Rutherford National Bank, and one Carter. That on that day the firm collected the coupons falling due and credited each of said customers with the exact interest received on the number of bonds purchased by him; and that during said month of January the number of bonds purchased by the Rutherford National Bank were delivered to it, and the number purchased by Carter were delivered to him, leaving in the hands of the firm, pledged, however, for loans, 16 bonds, the number purchased by plaintiffs, and 20 bonds, the number purchased by defendant Allen. That thereafter, and until the failure of the firm, it purchased no more of these bonds, and had no dealings with any other customers in relation to them. That Marquand & Co. held the bonds of the plaintiffs and defendant Allen as bankers and custodians, without any claim or lien thereon, having no authority to sell or pledge them, and neither the plaintiffs nor the defendant Allen ever knew of or consented to the pledging of any of them.

We think these findings are, in effect, that Marquand & Co. assumed that their several customers were owners in common of whatever bonds of this particular description they had on hand, to the respective amounts which each had ordered purchased, and that they recognized them as such owners, and that the customers did in fact own them in such manner, and that when only 36 of these bonds remained the firm did in fact set them apart as belonging to plaintiffs and respondent Allen in the respective proportions in which each had originally purchased, and regarded them, although pledged, as belonging to those two customers, and that, therefore, the conclusion of the referee that the plaintiffs and defendant Allen were entitled to the surplus remaining after the satisfaction of the loans for which they were pledged was sustained by the findings.

The appellant insists, however, that the additional finding that on the 21st day of April, 1899, the firm purchased 21 bonds "when

issued," 16 for the account of plaintiffs and 5 for the account of one Gaston, and that on the following 11th of July, in pursuance of such purchase, the firm paid for and received bonds of a certain number and credited the account of plaintiffs with 16 bonds without number, and on the 9th of August, 1899, bought for the account of defendant Allen 20 bonds, and on the same day received bonds of a certain number and credited the account of defendant Allen with 20 bonds without number, all of which numbered bonds were subsequently sold by the firm to third parties, nullifies even our construction of the findings of the referee. We think not. This course was in accordance with the custom of the firm in dealing with its large number of customers with respect to these bonds, and is not inconsistent with a recognition of common ownership. The disposition of the 5 bonds purchased by Gaston illustrates this. On the 12th of July the firm delivered to him his five bonds, but none of them were of the numbers bargained for on the 21st of April and delivered to the firm on the 11th of July. Marquand & Co. had the right to transfer a common ownership in the mass of bonds purchased by them to their several customers, and to treat them as such owners; and, if they in fact did so, they would be bound thereby. Their assignee for the benefit of creditors has no greater rights than they themselves would have had in case no assignment had been made. Their general creditors have no claim on any bonds actually belonging to customers, or in any proceeds realized from their sale. Welch v. Polley, 177 N. Y. 117, 69 N. E. 279.

The judgment should be affirmed, with costs payable out of the general fund in the hands of the assignee. All concur.